UNITED STATES DISTRICT COURTg
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COLVIN,

    Plaintiff,

v.                                                                         Case No. 2:09-cv-96
                                                                         HON. ROBERT HOLMES BELL

MICHAEL MARTIN,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Kenneth Colvin, an inmate currently confined at the Ionia Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Special Activities Coordinator Michael Martin in his official and individual capacity.

Plaintiff claims that on August 1, 2008, Greg VanHartsvelt, the chaplain at Marquette Branch Prison, interviewed plaintiff over the telephone after plaintiff had requested placement on the Kosher meal program. Plaintiff alleges that chaplain VanHartsvelt stated that he was recommending that plaintiff be returned to the Kosher meal program. On August 1, 2008, defendant Martin denied plaintiff's placement in the Kosher meal program. Plaintiff claims that he has continually practiced Orthodox Judaism and is sincere in his religious beliefs. Plaintiff claims that he had been removed from the Kosher diet in retaliation for his grievance filings against the Alger Maximum Correctional Facility complaining about the Kosher program.

Defendant moves for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant argues that plaintiff's claims regarding the denial of his Kosher diet should be dismissed. Defendant recognizes that plaintiff has litigated this issue in the past. Judgment had been entered for plaintiff on May 19, 2004, providing plaintiff a Kosher diet. Plaintiff was involuntary terminated from the Kosher diet while at the Alger Maximum Correctional Facility because he had a non-Kosher protein powder in his cell. This termination and the failure to reinstate plaintiff to the Kosher diet is the subject of another lawsuit currently pending in this court. *Colvin*

*v. Caruso*, 2:07-cv-61. The Sixth Circuit recently vacated in part and remanded the case to this court on issues similar to the issues presented in this case. The Sixth Circuit stated in that case:

> Turning first to Colvin's wrongful-removal claim, we note that MDOC's policy of removing a prisoner from the kosher-meal program for mere possession of a nonkosher food item may be overly restrictive of inmates' religious rights. Colvin was removed from the program pursuant to this policy after LMF officials discovered nonkosher protein powder in his cell. Recently, a federal district court in New Hampshire considered the constitutionality of a prison's "zero tolerance" policy of suspending a prisoner from the kosher-meal program for six months if the prisoner consumed or possessed food in violation of the diet. *Kuperman v. Warden, N.H. State Prison,* Civil No. 06-cv-420-JL, 2009 WL 4042760, at *6 (D.N.H. Nov. 20, 2009). Surveying recent caselaw on this issue, the court remarked that
>
>> [a] circuit split is brewing.... The Fourth Circuit Court of Appeals recently held that a prison violated RLUIPA when it prevented a prisoner from participating in Ramadan meals and group prayers after catching him breaking his Ramadan fast. *See Lovelace v. Lee,* 472 F.3d 174 (4th Cir.2006). In an earlier case, however, the Eighth Circuit Court of Appeals reached the opposite conclusion, upholding such a policy because "[r]ather than burdening Ramadan worshippers, the ... policy allows full participation in the fast and removes from the procedures only those worshippers who choose to break the fast." *Brown-El v. Harris,* 26 F.3d 68, 69-70 (8th Cir.1994). The *Lovelace* court distinguished *Brown-El* because it applied a First Amendment analysis, whereas *Lovelace* applied the "more rigorous" RLUIPA analysis. *Lovelace,* 472 F.3d at 188 n. 3. But a dissenting judge saw no material distinction and argued for the result in *Brown-El. See id.* at 208 (Wilkinson, C.J., concurring in the judgment in part and dissenting in part).
>>
>> In a case even closer to this one, the Seventh Circuit Court of Appeals recently applied the heightened statutory standard and nevertheless concluded that suspension of kosher diet privileges in response to dietary violations is not a substantial burden on

> religious exercise because it does not "compel conduct contrary to religious beliefs: [the prisoner] was forced to eat the non-kosher meals only because he turned down the kosher ones." *Daly v. Davis,* No. 08-2046, 2009 WL 773880 (7th Cir.2009) (unpublished). This holding also appears to be in tension with *Lovelace.*

*Id.* (alterations in original) (footnote omitted). Without further factual development on this issue, we cannot definitively conclude that LMF's strict application of its kosher-meal policies to Colvin was constitutional.

We likewise cannot say as a matter of law that Colvin's failure-to-reinstate claim lacks merit based on the record before us. In particular, we question the rationale upon which the prison officials relied to deny Colvin's request for reinstatement. Both Chaplain Riley and Burnett remarked that Colvin self-identified as Muslim, but neither provided any support for this conclusion. The record further demonstrates that Colvin consistently stated his religious preference as Jewish throughout his incarceration. In April 2002, for instance, he submitted a "Declaration of Religious Preference" form, indicating his "faith group" as Judaism. He also submitted numerous grievances during his time at LMF concerning alleged violations of kosher practice by the kitchen staff and the lack of Jewish services and Jewish reading materials. LMF, moreover, implicitly acknowledged Colvin's Jewish faith by allowing him to participate in the kosher-meal program.

Furthermore, some of the prison officials had reason to know of Colvin's religious beliefs in light of a prior lawsuit that he filed in October 2002. In that case, Colvin alleged that prison officials at a different Michigan facility improperly excluded him from the kosher-meal program because of insufficient answers that he gave in an interview about his religious faith. Burnett was named as a defendant in that lawsuit. The district court in that prior case criticized the prison officials for unconstitutionally requiring Colvin to demonstrate a certain level of objective knowledge about Judaism prior to being allowed to participate in the program, and it ordered the prison to provide Colvin with kosher meals pending trial. Soon thereafter, the defendants offered Colvin a judgment in his favor, and the court ordered that Colvin be placed in the kosher-meal program. Collectively, these facts undermine Chaplain Riley's and Burnett's conclusory assertions that Colvin self-identified as a Muslim. We further question the remaining rationale provided by LMF in denying

Colvin kosher-meal status. Following an interview with Colvin, Chaplain Riley concluded that he exhibited "minimal knowledge of Judaism and its dietary requirements." Burnett echoed this assertion in his memo, commenting that, in his interview with Riley, "Colvin provided minimal information in response to a question about his faith's major teachings." But the touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of "whether the beliefs professed ... are *sincerely held*," not whether "the belief is accurate or logical."*Jackson v. Mann,* 196 F.3d 316, 320(2dCir.1999) (emphasis in original) (citations and internal quotation marks omitted). And, under RLUIPA, prison officials are to focus their inquiries on "the sincerity of a prisoner's professed religiosity." *See Cutter v. Wilkinson,* 544 U.S. 709, 725 n. 13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

In Colvin's 2002 lawsuit, the magistrate judge faulted prison officials for focusing on Colvin's "knowledge of the tenets of [Judaism]" rather than on the issue of whether he "was subjectively insincere in his embrace" of the religion. The magistrate judge further remarked that

> [d]efendants' purely objective approach cannot be squared with First Amendment jurisprudence. In order to be entitled to accommodation, a person's beliefs need not be "acceptable, logical, consistent or comprehensible to others." *Thomas,* 450 U.S. at 714, 101 S.Ct. 1425. Nor must they be shared by all members of a religion or be part of any orthodox or official interpretation of church doctrine. *Id.* at 715-16, 101 S.Ct. 1425.... Defendants in the present case ... have gone beyond an inquiry into the subjective sincerity by administering a test on Judaism and judging for themselves the congruence between plaintiff's beliefs and Judaism, as prison officials understand it.
>
> By basing their decision to deny plaintiff's request
> [for kosher meals] purely on the content of plaintiff's knowledge of Judaism, defendants have set themselves up as arbiters of religious orthodoxy. To be entitled to be treated as a Jew in prison, plaintiff is not required to demonstrate that he is a good Jew or an expert in the Torah. He just must show that he sincerely adheres to the Jewish faith, despite his

> personal flaws and the obvious gaps in his religious education.
>
> *Colvin v. Curtis,* No. 02-cv-0728, Report and Recommendation (W.D.Mich. Aug. 25, 2003) (Docket Entry 70 at 13-14). Significantly, the prison officials in the 2003 lawsuit had used the same three-question test that Chaplain Riley used when he interviewed Colvin at LMF.
>
> Chaplain Riley and Burnett emphasized Colvin's lack of objective knowledge of Judaism, and thus they appear to have failed to make a proper inquiry into the sincerity of Colvin's beliefs. And, to the extent that their decision to deny Colvin's reinstatement request was based on his lack of objective knowledge, it was unconstitutional. *See, e.g., Love v. Reed,* 216 F.3d 682, 688 (8th Cir.2000) (rejecting a challenge to the sincerity of a inmate's religious beliefs due to his lack of scripture knowledge, noting that "[w]e would not deny that a Jew's desire to keep Kosher is rooted in religion even if he were not a Rabbinical scholar capable of explaining the more subtle spiritual aspects of Judaism").

Defendant has not provided any further explanation in this case regarding plaintiff's removal from the Kosher program other than that plaintiff possessed non-kosher protein powder which required his removal from the program in accordance with prison policy. Further, defendant states that plaintiff did not properly answer the questions that the Sixth Circuit has indicated fail to test the sincerity of a prisoner's religious beliefs. It is the opinion of the undersigned, that defendant's motion must fail.

Plaintiff states that he was denied his Kosher diet request in retaliation for his past grievance filings. Defendant denies that any grievance filing was a factor in the decision to reinstate plaintiff to the Kosher meal program. Defendant simply asserts that it is lack of knowledge of Judaism that indicated a lack of sincerity.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order

to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff has shown that he had engaged in protected conduct by filing grievances and that adverse action was taken against him in the denial of his reinstatement to the Kosher meal program. In the opinion of the undersigned, there remains a question of fact whether defendant's denial of plaintiff's reinstatement to the Kosher meal program was a result of retaliation for filing grievances.

Defendant argues that he is entitled to qualified immunity for damages against him in his individual capacity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because a question of fact exists regarding whether defendant accurately considered the sincerity of plaintiff's religious beliefs in denying the Kosher meal request and whether retaliation may have been a factor in the denial, defendant is not entitled to qualified immunity.

Accordingly, it is recommended that defendant's motion for summary judgment (Docket #34) be granted in part dismissing plaintiff's claims for damages in defendant's official capacity and denied in part as to all other claims in defendant's individual capacity.[1]

Plaintiff has filed motions to strike defendant's exhibit M, which is attached to defendant's affidavit. Plaintiff argues that the "Kosher Meal Worksheet" is hearsay and was not made in the normal course of MDOC business. Plaintiff also seeks sanctions against defense counsel for attaching this exhibit. Plaintiff's motions (Docket #55, #78 and #79) should be denied. Plaintiff has not shown that the exhibit is improper.

Plaintiff has also requested that his property be transferred with him during his medical transfer to Marquette Branch Prison. Plaintiff is now at Ionia Maximum Correctional

---

[1] To the extent that Plaintiff is suing defendant in his official capacity, such a claim is barred by the Eleventh Amendment. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).

Facility and has asserted that he was only at Marquette Branch Prison for fifteen days. It appears that this motion should be denied (Docket #90) as moot.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 16, 2010